Good morning, Your Honors. May I reserve two minutes for the rebuttal, please? I'll keep track of your time, but I'll try to alert you. Thank you. Your Honors, in this case, the petitioner— You need to state your name. Anya McLean, for the petitioner. Thank you. In this matter, Your Honor, the petitioner is a Guatemalan citizen, national, who was admitted to the United States in 1992. He was convicted of four jury offenses in Utah in 2012, which led him to these proceedings as Department of Homeland Security charged him with vulnerability and as an alien convicted of aggravated felony. The petitioner asserts that he is a U.S. citizen, thus not subject to removal proceedings because he derived U.S. citizenship through his U.S. citizen father. There are two issues in this case. One, whether the affidavits from petitioner's parents attesting to their separation could satisfy a legal separation requirement of the act. The problem is that the immigration judge did not review the facts that would go to show legal separation. Well, we have to decide what legal separation means, all right? And you're putting forth that legal separation is a situation where the parties will prove it by the facts. And the other argument would be that the words legal separation means something than that you were just living apart, that it has to be judicially created, correct? And so we have to interpret the language. And it seems to me that the position that you're putting forth would then make every legal separation would be a decision for the IJ, not for a court. And we're essentially would be asking IJs to sit as family law judges in terms of otherwise, I realize that it's Texas or whatever, and Texas doesn't have something called, they don't have legal separation. But it just seems to me what you're asking would create a slippery slope, and then everyone could come in court and say, well, my parents fell under this area. My parents were legally separated, and then they just testify, you know, we weren't living together, we were legally separated, and the IJ has to decide whether they believe them. Whereas there are documents that you can, a court can say you're legally separated. Well, you know, there are three ways to determine whether parents are legally separated or not. One is divorce, official divorce. Second is legal separation document. And third is separation of the parties where the intent is that they will never reside under the same roof. Well, and that's what you're trying to say, but where do you get your definition that, you know, and so that anyone can come in and say, well, we didn't plan to get back together. Well, the fact that Texas actually does not have this legal mechanism to officially create separation, and the fact that the mother states that she's religious, meaning that she would actually not even divorce the petitioner's father. The only mechanism for them is to reside separately. If you were, if this were to be referred to the district court, what kind of evidence do you contemplate presenting to the district court? Do you have some document that would show that some judicial entity somewhere or some governmental entity considers these people divorced? Separated? Do you have, like, tax returns that were filed separately? I mean, what do you have? Your Honor, the evidence that was presented by the petitioner. It's just the affidavit. So we have the father's affidavit and the mother's affidavit is somewhat equivocal, isn't it? Correct, Your Honor. The petitioner represented himself, pro se, in proceedings prior to this court, and evidence that he presented was separate. Okay. But there was some other evidence that was presented when your client made out his N-600 application. And there your client swore under oath that he lives at the same home as his parents, and his parents are married. Why isn't the service in a position to say, this just hasn't been proven? Your Honor, to address this fact is the N-600 was filed in 2014. The respondent, I'm sorry, the petitioner was 14 years of age when his father naturalized, and he was 17 when his father and mother separated. He filed N-600 somewhat 17 years later. And even though the application states that the mother and father lived at the time together and married, people reconcile. People fall out of the relationships and they come back together. So the application was filed somewhat 17 years later. So it doesn't go to show that when the petitioner was 17, the fact that the parents were separated. Well, we have sort of an equivocal record here. It seems to me they could take into consideration the N-600 document, couldn't they? Your Honor, again, the petitioner was 17 years of age when he says his parents were separated. He filed N-600 when he was about 34. Okay, but that's not answering the question. Can the court look at that document? Can the court consider that? I don't think so, Your Honor. Well, why? You just get to consider the ones that you want the court to consider and not the ones that go against your position? That's not really how we do court. You don't get to pick and choose. Your Honor, it's 17 years later. Well, that's the argument you make, why you believe one over the other. But what we're asking is can a court consider all of that? I don't think so, Your Honor. Your Honor, I think the court should strictly look at the facts that were in evidence when the petitioner was 17 years of age, and that goes to show his citizenship at that time. He can file for citizenship 50 years later. So you're arguing it's an undisputed fact, not that it's a disputable fact that it should be sent to the district court? You're arguing it's an undisputed fact that he had derivative citizenship? Is that your argument? Your Honor, I believe that the fact that the parents were separated, I don't believe it's disputed. And I think Attorney General states the same position in their brief as well. No, they say the other thing. They say it's not disputed. They believe it's an undisputed fact that they were not legally separated. That's what they think. You think it's an undisputed fact that they were legally separated. That's how I understand it. But I guess they'll tell us what they think. Do you want to reserve? You have two minutes. Yes, Your Honor. Good morning. Good morning, Your Honor. May it please the Court, Lisa Damiano on behalf of the Respondent. Good morning to you all. This case really just involves one issue, and that's whether the Petitioner, Mr. Estrada, failed to prove that he derived citizenship through his father's naturalization because he hasn't carried his burden to show that his parents were legally separated prior to his 18th birthday, as required under former 8 U.S.C. 1432a. See, I understand that you think there's no legal separation because there's no judicial document. That's the question, and I was trying to figure out where that came from, that idea that there has to be a judicial document even if state law recognizes legal separation starting from some point before a judicial document. So I couldn't find anything behind the bare statement in a case, and I guess an INS interpretation that it required a judicial document, and I was wondering how this came about and what's the reasoning and meaning and where do I find it behind that? Well, Your Honor, we're actually not arguing that. Oh, you're not? No. Our brief mentions there are three, as my opposing counsel mentioned, three ways under California law that you can demonstrate legal separation as a legal conclusion, and those are the order of divorce, the order of legal separation, and then this third option, and we recognize that. We're arguing that the evidence in this case does not support that this would be considered a legal separation under the law of the State of California. What we have here is essentially two affidavits, as you're aware, executed in 2014, and they're attempting to use those 2014 affidavits to prove that the parties or party had a subjective intent back in 2000 never to reconcile the marriage. Under California law, in order for it to be a legal separation under this prong, the parties would have to show a complete and final breakdown in the marital relationship or that they had parted ways with no intent to reconcile or reunite. So it's the petitioner's burden to show that in 2000 they had a subjective intent of parting ways never again to reunite or never to reconcile and that the evidence shows that subjective intent, and also you can also look to the objective evidence subsequent to show whether or not the parties did have that subjective intent. So if they had taken steps after 2000 to finalize their intent to dissolve the marriage or relationship. What we have, as you're aware, are the two affidavits that, well, the mother's decision to separate or divorce. It merely states that she's been residing in Houston, Texas, since 2000, and that she's decided to reside there because her and her husband are, quote, experiencing personal issues. And she phrases that in the present tense. Again, this is 2014. She says nothing about in 2000 we had a complete marital breakdown or in 2000 we decided our marriage wasn't working. There's nothing of that nature at all. It just says that in 2000 I moved to Texas because I was traveling as a missionary and it's causing personal issues. The father doesn't state anything about the intent in 2000, except he does say that they intend or he intends to divorce when they have the opportunity and they have come to the mutual agreement to live separately. Again, it doesn't say what their intent was in 2000, and that is his burden to show that the legal separation, that the facts support a legal separation that occurred in 2000, not in 2014. And again, as the panel pointed out, he does list his mother and father as married and living at the same address in California on his 2014 application. That supports the mother's affidavit that says that she visits her children, quote-unquote, very often. And when she does, she stays at the residence with her husband, the same California address. We just simply don't know, and the evidence presented really basically shows marital discord. And as my opposing counsel said, couples can go up and down and reconcile, decide to break up. And we need something, some evidence to show that they intended to part ways back in 2000 with no reconciliation, and we just don't have that in this case. Now, about the ‑‑ But what is the provision under California law, the family code or otherwise, that grants legal recognition of marital separation without a court order? That I don't know, Your Honor. I can look that up and get that to you. But if it's California law, you just said ‑‑ Yes. I recognized under California, and I was actually referring to a string of a long succession of case law. As for statutory provision, I don't know that off the top of my head. No, but if we apply California law and there's no recognition under California law of what you're talking about, then if that illegal separation only happens by judicial recognition, wouldn't that solve the problem, too? That would. But this court has a presidential decision, Manassian v. Gonzalez from 2005, which recognizes the State of California having the three different methods for showing legal separation. But in that case, wasn't there an actual court order of legal separation? No. Well, no. There was not a court order of separation. There was an order that referred back that they separated, gave a date of legal separation. It was not a court order of separation. It was a document that established a date of separation. But it was a legal document. Yes, it was a legal document. As opposed to people testifying that ‑‑ Yes. It was a legal document. There is a nonpublished case, Romo Jimenez out of this court from 2013, that found illegal separation without any court order whatsoever. So if we have a published case and a nonpublished case, what are you telling me to follow? Obviously the published case. I'm just drawing the Court's attention to the unpublished decision, which looked at the subjective intent of the parties at the time that they intended to ‑‑ well, that they claimed they were separating. Well, it just seems like if you use the words ‑‑ if the words legal separation are there, you know, why should IJs be family law judges? Well, absolutely, Your Honor. And, you know, the statute 1252B5A gives this court the authority to decide naturalization issues, citizenship issues, in the first instance. So, you know, no party in this case has disputed any facts. Nobody is asking for it to go to the district court for any evidentiary issues. As best I can tell, the only documentation or evidence that Petitioner has are these affidavits, which are contradicted by his own N-600 application filed contemporaneously with these actions. Well, counsel for Petitioner seems to say we can't look at the N-600. Well, I would strongly disagree. It's part of the administrative record. It's part of the evidence submitted on behalf of Petitioner to the USCIS in support of his claim to citizenship. And because we have such a lack of documentation, there's only a few things to look at here. We have the affidavits and we have the N-600. I don't see why this court would not be able to consider the evidence in that document, especially because it was sworn to when it was submitted to the Immigration Service. As for Texas law, we argue that it's irrelevant because there's no legal support for the claim that Texas would exercise jurisdiction over this marriage. We don't know that the mother was domiciled in Texas. She hasn't claimed that she was. And even if it was relevant, Texas doesn't have a mode to – they don't have a formal legal separation process, so these parents would have to be divorced in order to be considered legally separated under Texas law. And we know they're not divorced. And just to the point of opposing counsel's comment regarding his mother being put forth by counsel, Petitioner's mother never said she was against divorce or religious. That's outside the record. Yes. I mean, clearly she was traveling as a missionary, so that would indicate some level of commitment to a religious ethos. But we don't know what, and there are plenty of religions that allow divorce. So is the N-600 application has a status of its own? Yes. The N-600 was pending with the USCIS. So what's the status of that now? It was – USCIS informed me that it was denied in February of 2015. February 4th of 2015 it was denied. So after the filing of this petition for review. Okay. So they considered his derivative citizenship in that case. Yes, they did. And they determined that he did not meet the requirements under the former statute. Tell me, this is the IJ that was working on Section 320A? Is that what you're referring to? No, this is – the Child Citizenship Act does not control in this case. It would be the former statute, which is 1432A – 8 U.S.C. 1432A or 321 under the INA. In reading the immigration judge's opinion, I couldn't – at page 2 to the record, page 46, I couldn't quite understand. Is the immigration judge indicating that he couldn't qualify because he turned 18 a day too early? Yes. The Child Citizenship Act has been accepted as not – it's not applicable retroactively. It's – that's pretty much – it's established that it's not retroactive. So he turned 18 prior to the effective date of the Child Citizenship Act of 2000. That date was February 27th of 2001, and he turned 18 on February 17th. What's that have to do with the case before us now, if anything? Well, the prior statutes that we're discussing here that applies to Mr. Estrada had a different set of requirements for derivative citizenship. Excuse me. So under the former statute that Mr. Estrada must establish, he has to show that there was a legal separation because his mother never naturalized. So you have a child born to alien parents, and only one parent naturalized. So he had to show that his parents were legally separated and that he was in the legal custody of the naturalized parent, and that is to protect the noncitizen parents' legal rights. The new statute that went into effect in 2001 doesn't require that. I see. So that's not relevant to our decision? No, it's not relevant. Petitioner doesn't argue that the Child Citizenship Act should apply to this case. The legal custody thing, is that a factual matter or a document? Well, the court and the agency can consider any evidence to determine whether there was legal custody. I know that's not an issue in this case. No, because the agency didn't get to that because they found that there was no legal separation. If this court found there to be a legal separation, we would ask that you remand to the agency for a determination of legal custody. I'm sorry, not to the agency, excuse me, to the district court for an evidentiary hearing on the legal custody issue. I see that I'm way out of time. Well, you were answering our questions. Yes. So that was very helpful. Thank you. Is there anything further? No? Okay, thank you very much. Thank you. You have two minutes and eight seconds. Your Honor, once again, Petitioner respectfully requests that this court either find him a United States citizen or remand this matter for factual determination to the immigration judge. Respondents? How could we find him a United States citizen? To the immigration judge or to the board? Pardon? We're revealing the board's decision. It wouldn't be remanded to the immigration judge. It would be to the board, wouldn't it, if we decided that? Yes. In the alternative, Your Honor, this matter would be remanded . . . We would respectfully request that this matter would be remanded to the board with directions to remand it back to the immigration judge for factual determination. And perhaps the Petitioner can present more evidence that was not presented when he was representing . . . The procedure was to send it to the district court if there was a disputed issue of fact as to whether or not he was a citizen because if he was a citizen, he didn't have to exhaust his remedies before the BIA. Have I got that wrong? I'm not sure in which order these things go, but I thought the Romo court sent it to the district court following another decision of the court. Okay? Have I got this? Maybe I got this wrong. He certainly didn't present any evidence to the BIA that he was a citizen. That's correct, Your Honor. He represented himself per se. So either there's some reason he doesn't have to exhaust or he loses on failure to exhaust, right? So there has to be a reason he failed to exhaust, that he is excused from failing to exhaust. He states that he's uneducated and he's a laborer. So . . . It's okay. So, again, Your Honor, we respectfully request that this court takes proceedings in a way that this matter is properly followed back to a proper agency or court for factual determination of whether petitioner's parents were, in fact, legally separated before he was 18 years of age. Thank you. Thank you. This matter will stand submitted.
judges: Wallace, Callahan, Restani